IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TIMOTHY LEE GUTHRIE                                                                          PLAINTIFF

V.                              Case No. 3:23-CV-00128-BBM

MARTIN J. O'MALLEY,[1] Commissioner,
SOCIAL SECURITY ADMINISTRATION                                                  DEFENDANT

**ORDER**[2]

Plaintiff Timothy Lee Guthrie ("Guthrie") applied for Title II and Title XVI disability benefits on April 19, 2021, alleging disability within the meaning of the Social Security Act beginning on August 28, 2020. (Tr. at 17). His claim was denied initially and upon reconsideration. *Id.* Following a hearing, the Administrative Law Judge ("ALJ") denied Guthrie's application on September 23, 2022. (Tr. at 28). The Appeals Council thereafter denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Guthrie has requested judicial review.

On appeal, Guthrie challenges the Commissioner's denial of disability benefits, asserting three points of error. As set forth below, the Court finds no basis for reversing the Commissioner's decision and affirms.

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

[2] The parties consented in writing to the jurisdiction of a United States Magistrate Judge. (Doc. 4).

I.     THE COMMISSIONER'S DECISION

At Step One of the five-step sequential process,[3] the ALJ found that Guthrie had not engaged in substantial gainful activity since August 28, 2020. (Tr. at 19). The ALJ then identified three severe impairments: degenerative disc disease of the lumbar spine, ischemic heart disease, and diabetes mellitus. (Tr. at 20). After finding at Step Three that none of Guthrie's impairments—individually or combined—met or equaled a listed impairment, the ALJ determined that Guthrie had the residual functional capacity ("RFC") to perform work at the medium exertional level with certain limitations. (Tr. at 22–23). The ALJ found that Guthrie could lift and carry no more than fifty pounds at a time but otherwise could frequently lift and carry up to twenty-five pounds; he could stand or walk up to six hours in an eight-hour workday; and he could frequently stoop, crouch, climb, balance, kneel, or crawl. (Tr. at 23).

At Step Four, the ALJ determined that Guthrie was able to perform his past relevant work as a spray painter, correction officer, axle finisher, and trailer inspector. (Tr. at 25–26). Relying upon vocational expert testimony, the ALJ found additionally that Guthrie could perform other jobs that exist in significant numbers in the national economy, such as floor waxer, kitchen helper, and night cleaner. (Tr. at 26–28). Consequently, the ALJ concluded that Guthrie was not disabled. (Tr. at 28).

---

[3] The ALJ must determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4).

## II.     DISCUSSION

### A.     Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

## B. Arguments on Appeal

Guthrie argues three points for reversal of the decision of the Commissioner: (1) the ALJ's assessment of Guthrie's RFC is not supported by substantial evidence, (Doc. 12 at 29–34); (2) the ALJ neglected to properly evaluate Guthrie's subjective complaints of pain, *id.* at 34–35; and (3) the ALJ failed to develop the record adequately, *id.* at 35–38. The Court will address each argument, in turn.

### 1. RFC

Guthrie alleges the ALJ's RFC determination is not supported by substantial evidence. (Doc. 12 at 30–34). Specifically, Guthrie asserts that the ALJ focused only on evidence to support the conclusion that Guthrie could perform work at the medium exertional level with some restrictions and ignored a wealth of evidence that would have supported a more restrictive RFC.

A claimant bears the burden of establishing his RFC, which is "the most [he] can still do despite [his] limitations." *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ must review all the relevant medical and other evidence when determining a claimant's RFC, and an ALJ is not required to include limitations that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "The mere fact that some evidence may support a conclusion opposite" to the ALJ does not allow for reversal. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010)

4

(quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Moreover, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

At the hearing on August 10, 2022, Guthrie testified that he was unable to work due, "number one," to his knees but also pain in his low back and migraine headaches. (Tr. at 44). He stated that, after thirty minutes, he had to get off his feet because his "back and knees are almost breaking in two." (Tr. at 50–51). Guthrie admitted that he completed pain management the year before and that he was treating his low-back pain with medical marijuana, heating pads, and ice packs. (Tr. at 44–45). He reported having had a laminectomy "a long time ago" in 2002 or 2003, and the ALJ noted that Guthrie had worked for more than a decade following the surgery. (Tr. at 24, 52). Guthrie testified that he lived with his father and did chores, such as laundry, dishes, and cooking. (Tr. at 48). Guthrie stated that he had severe depression and anxiety but that he did not take medication. He had recently begun therapy. (Tr. at 49–50).

The ALJ determined that Guthrie could perform medium work—he could lift and carry no more than fifty pounds; could frequently lift and carry up to twenty-five pounds; could stand or walk up to six hours in an eight-hour workday; and could frequently stoop, crouch, climb, balance, kneel, or crawl. (Tr. at 23). In fashioning the RFC, the ALJ considered, among other things, a CT scan performed in December 2020, showing Guthrie had moderate to severe foraminal narrowing at L5-S1. (Tr. at 24, 964–65). He had received injections for pain, which Guthrie asserted were ineffective. (Tr. at 23–24).

The ALJ cited multiple exhibits throughout his decision detailing Guthrie's treatment. *Id*. Notes from a pain management visit in October 2020 reveal Guthrie had a

5

L3-L4 medial branch block in September 2020 "with significant relief of pain, at least 80% relief." (Tr. at 822). In a follow-up appointment the next month, the doctor noted that "the left diagnostic medial branch blocks were successful . . . [and] will be followed by therapeutic medial branch neurotomy." (Tr. at 825). In January 2021, APRN Amber Sloan noted that Guthrie had a left L3-L4 radiofrequency procedure performed on November 19, 2020, that resulted in "fair improvement in pain level and 10% relief." (Tr. at 829). On March 16, 2021, Guthrie underwent a right lumbar medial branch block at L5-S1. (Tr. at 862). At a follow-up pain management visit, APRN Sloan noted that Guthrie had another radiofrequency procedure on his right L5-S1 done on June 15, 2021, and that, while he still reported pain in his right low back radiating down his right extremity, he had normal range of motion in all major joints. (Tr. at 24, 991–92). APRN Sloan informed Guthrie that the radiofrequency procedure "can produce significant inflammatory process to the area producing radicular-like symptoms" and assured him that "over the next few weeks, this should begin to calm down." (Tr. at 993).

The ALJ noted that, at the next follow-up examination done in August 2021, Guthrie had normal motor function in upper and lower extremities; normal posture, ambulation, and stance; and could transfer from sitting to the examination table without difficulty. (Tr. at 24, 1096). Guthrie did, however, have decreased range of motion in his low back. *Id*. Notes from the visit show that Guthrie "now has about 80% relief" following the radiofrequency procedure on his right L5-S1, and, although he had "increasing left low back pain," he did not feel it was enough to treat at the time. (Tr. 1097). The ALJ cited to a cardiology examination in March 2022 where Guthrie exhibited a normal gait, and the

doctor noted an ability to exercise. (Tr. at 24, 1195). There was no evidence that Guthrie required an assistive device for ambulation. (Tr. at 24).

The ALJ also looked at Guthrie's other impairments, both severe and non-severe. (Tr. at 20–24). The ALJ mentioned that testing done in March 2022 showed that Guthrie had normal heart function with "[n]o evidence of myocardial ischemia." (Tr. at 1187). Although Guthrie had been prescribed Lisinopril for hypertension, he failed to take it regularly, taking it "only when he feels his blood pressure is high." (Tr. at 24, 1137). Similarly, Guthrie refused to take insulin for his diabetes and was willing to only take oral medication once per day. (Tr. at 24). Although the record indicated that he had polyneuropathy from his diabetes, there was no evidence about how the condition affected him. *Id*.

As for Guthrie's knee pain, he had a "remote history of bilateral knee surgeries," but more recent medical records indicated he had normal gait and normal joint range of motion. (Tr. at 22). Finally, the ALJ found that the required criteria for establishing migraine headaches was "not objectively established by the record." (Tr. at 21–22). The record was devoid of imaging, and the records that existed equivocated as to whether the "alleged headaches are migraines or an artifact of hypertension." *Id*.

The ALJ found persuasive the opinions of Dr. Kay Cogbill and Julie Bruno, Psy.D., both of whom reviewed Guthrie's medical records and determined that he did not suffer from a severe mental impairment. (Tr. at 25). The ALJ found the opinions supported by the record and consistent with the general lack of treatment for mental impairments therein. *Id*.

7

The ALJ also found the opinions of Dr. Patrick Fields and Dr. Kristin Jarrad persuasive. *Id*. Dr. Fields, who reviewed Guthrie's records in September 2021, opined that he could perform light work. *Id*. Dr. Jarrard, who reviewed Guthrie's records in January 2022, determined that he could perform medium work with frequent stooping and crouching. *Id*. The ALJ found these opinions were supported by their expertise and written analysis and consistent with the record that showed normal gait and full strength with only some limitation in lumbar range of motion. *Id*. The ALJ gave more weight to Dr. Jarrard's opinion based on her access to more of Guthrie's medical records. *Id*.

Much of the medical evidence Guthrie claims that the ALJ ignored was from examinations that occurred prior to August 28, 2020, the date of his alleged onset of disability. Guthrie acknowledges in his brief that he filed three prior applications for benefits in 2009, 2017, and 2019, all of which were denied and not appealed to district court. (Doc. 12). Ordinarily, res judicata bars reexamination of evidence considered in prior applications. *Hillier v. Social Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007). However, "in the context of a progressive disease or degenerative condition, evidence that is offered as proof of a disability, and not found persuasive by an ALJ in a prior proceeding, may be considered in a subsequent proceeding in combination with new evidence for the purpose of determining if the claimant has become disabled since the ALJ's previous decision." *Id*. (citing *Groves v. Apfel*, 148 F.3d 809, 810–11 (7th Cir. 1998)). Here, Guthrie has failed to explain how his condition has worsened or degenerated. In fact, the medical evidence supports the opposite conclusion—that his impairments have improved and stabilized.

8

Under these circumstances, there is substantial evidence in the record as a whole to support the ALJ's determination that Guthrie could perform work at a medium exertional level and that jobs exist in sufficient quantities in the national economy. Guthrie argues that the ALJ's analysis of the medical evidence is sparse and only cites records favorable to his finding of medium work. Yet, Guthrie has cherry-picked records predating his alleged disability onset date to support his RFC claim. Medical evidence in the record since that onset date supports the ALJ's decision. It is not for this Court to reweigh the evidence and make an independent determination. Rather, the Court looks only to whether substantial evidence exists to support the ALJ's finding. In this case, it does. What is more, one of the jobs cited by the vocational expert as available in the national economy—trailer inspector—requires only a light level of exertional demand. (Tr. at 26). The identified job is less demanding on Guthrie than would be permitted by the RFC limitation, lending additional support to the conclusion that substantial evidence supports the ALJ's decision.

### 2. Subjective Complaints of Pain

Next, Guthrie argues that, in assessing his subjective complaints of pain, the ALJ failed to mention the factors outlined in *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984). (Doc. 12 at 34–35). Guthrie also maintains that he had a long work record from 1993 until 2016, spanning twenty-three years, prior to his most recent break in work that the ALJ failed to acknowledge. *Id.* at 35.

When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3)

9

precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019); *see also Polaski*, 739 F.2d at 1322; SSR 16-3p (codifying *Polaski* factors). An ALJ need not explicitly discuss each factor. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the claimant's complaints of pain . . . and whether the evidence so contradicts the claimant's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004). Where an ALJ considers the relevant factors and then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

In this case, the ALJ cited 20 C.F.R. §§ 404.1529, 416.929, and SSR 16-3p in evaluating Guthrie's subjective complaints of pain. (Tr. at 23). The *Polaski* factors are incorporated into these regulations. As such, the ALJ did not err in failing to cite *Polaski* specifically. Moreover, the ALJ conducted a thorough review of the record and pointed out inconsistencies with Guthrie's claims of disabling pain. *Id*. The ALJ cited Guthrie's noncompliance with treatment recommendations, such as refusing to take his prescribed medications regularly; his reliance on medical marijuana, ice packs, and a heating pad for his pain; and the absence of objective medical evidence to support his complaints. (Tr. at 24). Noncompliance with medication and conservative treatment are appropriate for the ALJ to consider in evaluating complaints of disabling pain. *Grindley v. Kijakazi*, 9 F.4th 622, 630–31 (8th Cir. 2021) (holding ALJ within his discretion to discount complaints of

10

pain where claimant failed to comply with prescribed medication); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding an ALJ may consider a plaintiff's conservative course of treatment as indicative that his symptoms are not disabling). Furthermore, in finding that Guthrie's statements concerning the intensity, persistence, and limiting effects of his impairments were not consistent with the evidence in the record, the ALJ noted Guthrie's earlier back surgery and his return to work following surgery for approximately ten years. (Tr. at 23–24). The fact that the ALJ did not explicitly discuss Guthrie's full work history in detail is not fatal to the analysis where the ALJ acknowledged and considered appropriate factors before discounting Guthrie's subjective complaints.

### 3. Failure to Develop the Record

For his final point, Guthrie maintains that the ALJ failed to develop the record regarding Guthrie's work-related limitations. (Doc. 12 at 35–38). Specifically, Guthrie contends that the record contains no medical source opinions from a provider who treated or examined Guthrie. *Id.* at 36. Guthrie argues that there must be an opinion, conclusion, or record from a treating or examining physician, addressing his physical limitations for the ALJ to review. *Id.* at 37. Moreover, because the ALJ relied on consultative medical opinions from doctors who never examined Guthrie, two of which disagreed regarding Guthrie's physical limitations, the ALJ was left to draw his own inferences or guess about Guthrie's limitations. *Id.* at 36–37.

The claimant has the burden to offer the evidence necessary to make a valid decision about his claim. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). An "ALJ is required to order medical examinations and tests only if the medical records presented to him do not

11

give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (internal citations and quotations omitted). The claimant "bears a heavy burden in showing the record has been inadequately developed [and] must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007) (unpublished per curiam) (citation omitted); *see Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial") (internal citations and quotation marks omitted).

To the extent Guthrie is arguing that the record was not sufficiently developed because his RFC must be based on a treating physician's medical opinion, he is incorrect. There is no requirement that an RFC be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *see Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (same). Current regulations require the ALJ to weigh multiple factors when evaluating medical evidence rather than assign specific deference to treating physicians. *See Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022). Further, the ALJ—not a doctor—is responsible for determining the claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).

The ALJ had the benefit of Dr. Jarrard's medical opinion that Guthrie could perform medium exertional work with an exception for frequent stooping and crouching. The ALJ also reviewed medical records establishing the following: (1) full strength, (2) normal motor functioning, (3) full joint range of motion, (4) the ability to exercise, and finally, (5)

medical treatment that had been effective in most respects. Finally, the ALJ had before him multiple records indicating that Guthrie had been noncompliant with taking his prescribed medications for his pain, heart condition, blood pressure, and diabetes and that he had only been using conservative treatment at home for almost a year after being released from pain management. Under these circumstances, the record in this case was sufficient to support the ALJ's determination.

### III. CONCLUSION

The Court concludes that the ALJ applied proper legal standards and that substantial evidence on the record as a whole supports the ALJ's decision. The Commissioner's finding that Guthrie was not disabled within the meaning of the Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

SO ORDERED this 27th day of August, 2024.

_____
UNITED STATES MAGISTRATE JUDGE